# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 01-741 LH

FIRDIE EARL WHITE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress Evidence and Statements (Docket No. 13), filed August 15, 2001. The Court, having considered the submissions of the parties, the testimony of witnesses, the arguments of counsel, and otherwise being fully advised, will grant the motion in part and deny it in part.

## FACTS

On December 22, 2000, officers from Albuquerque Police Department ("APD") received a tip of narcotics sales in Apartment C at 540 Cardenas SE. Upon arriving at the apartment complex, Officers Simballa and Porter met Francisco Nevarez and Stephanie Holguin. Mr. Nevarez told the officers he lived in Apartment C and agreed to take the officers there himself.

When the officers entered the apartment, they found five other people inside. They immediately saw a man, later identified as Defendant Firdie Earl White, holding a silver handgun.

When he saw the officers, Defendant turned his back to them and placed the handgun on a counter top. From the doorway, the officers could not see where Defendant had placed the handgun. The officers ordered everyone in the room to their knees with their hands upon their heads. Officer Simballa approached Defendant, retrieved the handgun from the counter top, removed the fully-loaded magazine, and placed the unloaded handgun on top of a tall entertainment center. Officer Simballa handcuffed Defendant's arms behind his back and patted him down for other weapons, finding none. During the pat down and subsequent events, Officer Porter remained in the doorway to prevent anyone from leaving and had his service weapon pointed at Defendant in a "low ready" position.[1]

In conducting the pat down, Officer Simballa felt a small, hard object in Defendant's pants pocket that he could not identify, but he did not suspect it to be a weapon. Officer Simballa asked Defendant what he had in his pocket, and Defendant told him, "Take it out." Officer Simballa removed a small, plastic dental floss container that rattled as he pulled it out. Officer Simballa set the dental floss container aside, left Defendant, still handcuffed, and patted down the other people in the room, again finding no additional weapons.

Returning to the container, Officer Simballa shook it, finding that it rattled like there were loose objects inside. The container also showed signs of having been modified. Officer Simballa opened it and found four "rocks" of crack cocaine.

Officer Simballa immediately placed Defendant under arrest for possession of narcotics and read him his *Miranda* warnings. Officer Porter then re-holstered his gun. Officer Simballa asked

---

[1] Officer Simballa described the "low ready" position as having the service weapon pointed in line with the person but downward and in front of the person so that the officer can pull up to the target if necessary.

Defendant what the substance in the container was, and Defendant responded that it was crack cocaine. Officer Simballa then asked Defendant, "What were you doing with the gun?" and Defendant responded, "I was thinking of buying it." After learning Defendant's name,[2] Officer Porter called it in to the National Crime Information Channel ("NCIC") and discovered that Defendant had an outstanding arrest warrant for traffic violations. The officers confiscated the handgun, as well as the crack cocaine, and took Defendant to the Bernalillo County Detention Center, where he was booked. Later investigations revealed Defendant's status as a convicted felon.

A grand jury subsequently indicted Defendant under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Possession of a Firearm by a Person Previously Convicted of a Felony. Defendant moves this Court to suppress the crack cocaine, the handgun, the two statements Defendant made to the police immediately after his arrest, and Defendant's identity.

## DISCUSSION

### A. The Legality of the Search

Defendant moves to suppress the crack cocaine and the two post-arrest statements as fruits of an unlawful search of his person and possessions. Therefore, this Court must first decide whether the officers conducted an unlawful search of Defendant and, if so, whether the crack cocaine and the statements are fruits of that search.

Defendant initially argues that Officer Simballa's pat down was unjustified, since it was predicated only on the anonymous tip and the fact that Defendant was holding a handgun upon the

---

[2] It is not clear from the testimony whether the officers asked and Defendant told them his name or whether they obtained it from an identification card.

officers' entry. He further asserts that, even if there was justification to perform a pat down search for weapons, once Officer Simballa appreciated neither weapons nor easily identifiable contraband, the search should have terminated, absent voluntary consent to continue it. Defendant maintains that his consent to remove the item from his pocket was involuntary, but even if voluntary, it did not extend to Officer Simballa shaking and opening the container to reveal the crack cocaine.

A police officer may "pat down" a person's outer clothing without a warrant or probable cause, as long as he has reasonable suspicion "to conclude that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In this case, the officers had received a tip about drug activity, which they were in the process of investigating, Defendant was holding a handgun, and he had turned away from the officers' view when they arrived. Moreover, the officers were outnumbered seven to two. Given these circumstances, the officers' suspicion that criminal activity could be afoot or that dangerous weapons were present was reasonable, and they were justified in conducting the pat down of Defendant.

In the course of a *Terry* pat down, if an officer feels an item that is not a weapon, but is identifiable as contraband, the officer may seize that item, but the officer may not manipulate an item further by palpating or squeezing it through clothing, in order to determine whether it is contraband. *See Minnesota v. Dickerson*, 508 U.S. 366, 373-74 (1993). Thus, an object's incriminating character must be "immediately apparent" from the pat down in order for the officer to remove the item from the clothing. *Id.* at 376 (quoting *Horton v. California*, 496 U.S. 128, 136 (1993)).

Officer Simballa testified that, upon feeling the object in Defendant's pants pocket, he did not believe it was a weapon, and he could not positively identify it as contraband. The officers had, at that point, alleviated their suspicions with respect to Defendant's pat down, and no new information arose

from it that provided probable cause to continue the search. The decision in *Minnesota v. Dickerson* dictates that the officer must stop a search at that point, unless he has voluntary consent from the suspect to continue.

The parties agree that, when asked what was in his pocket, Defendant told Officer Simballa, "Take it out." The parties disagree, however, about whether Defendant's consent to remove the object was voluntary. Defendant maintains that his consent was involuntary because when he gave it he was not free to terminate the encounter with the officers. The government argues that Defendant's consent was voluntary because he was not under arrest, threatened, or coerced, and Officer Simballa did not have a weapon drawn.

A police-citizen encounter is not consensual if the citizen does not feel free to end it at any time and go about his business. *See United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999) (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). Voluntariness is evaluated by a totality of the circumstances. *See id.* In *United States v. Sanchez*, the Tenth Circuit identified several factors that may indicate that a reasonable person would not feel free to terminate an encounter with the police, including, *inter alia*, the threatening presence of several officers, the display of a weapon by an officer, and interactions that take place in nonpublic or small, enclosed places. *See United States v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996).

Considering the totality of the circumstances, the Court concludes that Defendant's consent was not voluntary. Defendant was handcuffed with his hands behind his back in a small, crowded apartment. Although Officer Simballa's weapon was not drawn, Officer Porter had his weapon drawn and trained on Defendant before, during, and after the pat down, while he simultaneously blocked the doorway. Officer Simballa himself conceded on cross-examination that Defendant was not free to

leave at any point in time when he was questioned about the contents of his pockets, even after Officer Simballa had determined that Defendant carried no other weapons or identifiable contraband. Defendant was not free to terminate his encounter with the police, so his consent must be considered involuntary. Absent consent, probable cause, or a warrant, the search was invalid, and the crack cocaine that was seized is suppressed.

### B. The Post-Arrest Statements

Defendant argues that the statements he made in the apartment immediately after his arrest should be suppressed as fruits of the unlawful search. The government contends that, because there was an existing warrant for Defendant's arrest, and Defendant was read his Miranda warnings, there was no violation of Defendant's rights.

While Miranda warnings serve to put a suspect on notice that by speaking he may waive his Fifth Amendment rights, Miranda warnings given incident to an unlawful search or seizure are not *per se* sufficient to purge post-arrest statements of the taint of the Fourth Amendment violation. *See Dunaway v. New York*, 442 U.S. 200, 217 (1979)*; Brown v. Illinois*, 422 U.S. 590, 601-02 (1975). The totality of the circumstances, which may include the giving of Miranda warnings, *see Brown*, 422 U.S. at 603, must indicate that a statement given by the defendant is "so attenuated [from the unlawful search or seizure] so as to dissipate the taint." *Wong Sun v. United States*, 371 U.S. 471 (1963). "[I]n determining whether the confession is obtained by exploitation of an illegal arrest[: t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant . . . . And the burden of showing admissibility rests, of course, on the prosecution." *Dunaway*, 442 U.S. at 218 (citing *Brown*, 422 U.S. at 603-04).

In this case, the officers read Defendant his Miranda warnings and started to question him immediately after they discovered the crack cocaine. Virtually no time elapsed between the unlawful search and the questioning that produced Defendant's responses. Additionally, there were no other intervening circumstances. While the officers in this case do not appear to have engaged in flagrant misconduct, the Court nevertheless finds that the close temporal proximity and complete lack of intervening circumstances are sufficiently compelling to show that there was no attenuation to dissipate the taint of the unlawful search. Therefore, Defendant's statements identifying the substance as crack cocaine and explaining why he was holding the handgun will be suppressed as fruits of the unlawful search.

**C. Defendant's Identity and Status as a Felon**

Defendant asserts that APD officers obtained his identity and status as a felon only as a result of his unlawful arrest for drug possession and subsequent booking into the Bernalillo County Detention Center system. The investigation that identified him as a felon, Defendant therefore argues, is a fruit of the unlawful arrest, and without the government's knowledge of Defendant's felon status, no charges would now lie against him. Defendant adds that the police investigation, which revealed his identity and his status as a felon, was not sufficiently attenuated from the unlawful arrest so as to remove its taint. The government contends that the identity of a person cannot be suppressed.

"The 'body' or identity of a Defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even it if is conceded that an unlawful arrest, search, or interrogation occurred." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *see also United States v. Cisneros-Cruz*, 185 F.3d 875, *6 (10th Cir. 1999) (unpublished opinion) ("[Defendant's] statement that he was 'Edmundo Cisneros-Cruz' . . . concerned only an affirmation of his own

identity . . . [which] . . . is never itself suppressible as a fruit of an unlawful arrest.") (quoting *Lopez-Mendoza*, 468 U.S. at 1039). Defendant's motion to suppress the officers' attainment of his identity is therefore denied.

### D. Inevitable Discovery Based on the Outstanding Warrant

The government urges that the seizure of the drugs and Defendant's post-arrest statements is justified under the inevitable discovery doctrine, since Defendant would have been arrested pursuant to the bench warrant and lawfully searched incident to that arrest. The Court is not convinced that an arrest and search pursuant to the outstanding warrant was inevitable under these circumstances.

"Under the inevitable discovery exception [to the exclusionary rule], unlawfully seized evidence is admissible if there is no doubt that the police would have lawfully discovered the evidence later." *United States v. Romero*, 692 F.2d 699, 704 (10th Cir. 1982). The Court must use caution, however, in applying the inevitable discovery doctrine when it involves mere speculation about how the events would have unfolded had there been no unlawful search or seizure, *see id.,* and the government has the burden of proving by a preponderance that the evidence in question would have been discovered without the unlawful search. *See United States v. Souza*, 223 F.3d 1197, 1203 (10th Cir. 2000).

Assuming the search of Defendant had ended when the pat down uncovered no weapons or contraband, it is not clear from Officer Simballa's testimony that the officers would have, as a matter of course, submitted Defendant's name to NCIC, based solely on the fact that he was holding a firearm for which he could not prove ownership. No testimony was offered regarding APD's protocol, if any, in such a situation or Officer Simballa's personal mode of operation. Since the

government has not shown by a preponderance of the evidence that such an inquiry inevitably would have been made, the Court will not apply the inevitable discovery doctrine in this case to rectify the unlawfulness of the search.

**E. The Handgun**

Finally, Defendant contends that, because the APD officers could not have seized the handgun in connection with his illegal arrest and since another person present claimed ownership of it, they cannot now use the handgun in connection to the new felon in possession of a firearm charges against him. Defendant also argues that, without his unlawful arrest, the handgun might still have been seized, but not necessarily in connection with him. By this logic, Defendant essentially argues that the handgun, like the drugs and the statements, is a fruit of the unlawful arrest. The government, on the other hand, asserts that the APD officers lawfully seized the handgun for safety and to ascertain ownership, according to police policy.

As with any objects, guns in plain view may be seized by the police without a warrant whenever there is probable cause to do so. *See Horton v. California*, 496 U.S. 128, 136-37 (1990). Because guns are dangerous and often difficult to link to criminal activity upon mere sight, probable cause "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence in a crime; it does not demand any showing that such a belief be correct or more likely true than false." *United States v. Naugle*, 997 F.2d 819, 823 (10th Cir. 1993) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion) ).

The parties do not dispute that Defendant was holding a firearm when the officers entered the apartment. The officers were in the apartment with the consent of a resident and saw the handgun in

Defendant's hand. The initial seizure was justified under the exigent circumstances created by Defendant's furtive motion of turning away from the view of the officers. Moreover, the officers entered the apartment based on information that drugs were being sold there. It was not unreasonable for officers to believe that the gun, for which no one present could show proper ownership, was either stolen or connected with criminal activity. Given these circumstances, the officers had probable cause to justify their seizure of the handgun.

After the officers initially seized the handgun for safety, they continued to hold it because no one in the room could prove ownership. Officer Simballa testified that it was APD's policy to confiscate any "ownerless" gun regardless of the presence or absence of criminal activity. Only after further investigation revealed Defendant's status as a felon, did the seized handgun became evidence in the government's felon-in-possession case.

Even though the officers' later search of Defendant's pocket violated his Fourth Amendment rights, his argument that the seizure of the handgun is retroactively a fruit of that search is untenable. The officers seized the handgun before the pat down, the retrieval of the drugs, and Defendant's arrest. Given this sequence of events, the handgun cannot possibly be a fruit of the unlawful search.

The fact that the officers did not know Defendant's name and felon status at the time the handgun was confiscated does not change the fact that the handgun was properly seized for purposes of safety and to locate its rightful owner. Evidence otherwise properly attained need not be seized precisely for the charge for which it is ultimately used. *See, e.g., United States v. Maynes-Ortega*, 857 F.2d 686, 687-88 (10th Cir. 1988) ("[The proposition] that only when evidence is relevant to the offense for which the search is made may it be used in court flies in the face of common sense and public policy."). Accordingly, the handgun will not be suppressed.

**IT IS, THEREFORE, ORDERED** that the crack cocaine and Defendant's post-arrest statements are **suppressed**. The handgun, Defendant's identity, and the police investigation revealing Defendant's outstanding warrant and status as a felon are **not suppressed**.

_____
**UNITED STATES DISTRICT JUDGE**